MIGUEL MELÉNDEZ MUÑOZ, demandante y apelado, *v.* JUNTA EXAMINADORA DE CONTADORES PÚBLICOS, demandada y apelante.

No. 4943.—*Sometido:* Enero 17, 1930. *Resuelto:* Junio 10, 1931

*Attorney General James R. Beverley* y *R. Cordovés Arana, Subprocurador,* abogados de la apelante; *L. Muñoz Morales* y *M. Marcos Morales,* abogados del apelado.

EL JUEZ ASOCIADO SEÑOR ALDREY, emitió la opinión del tribunal.

En 13 de mayo de 1927 fué aprobada la Ley No. 42, página 235 del tomo de leyes de ese año, por la cual se reglamentó la práctica de la contabilidad pública en esta

Isla y se creó una Junta Examinadora de Contadores Públicos compuesta por tres personas que tengan certificados de contador público autorizado, expedidos de acuerdo con las leyes de cualquier Estado de la Unión, y que hayan ejercido como tales por un período de tiempo no menor de cinco años. Esa junta está facultada por dicha ley para expedir título de contador público autorizado (*certified public accountant*), cuyo título abreviado es "C. P. A.," a la persona que se examine ante ella y apruebe el examen prescrito por la misma ley; y también para expedirlo sin examen, diciendo la ley a este respecto en su artículo 8 lo siguiente:

"La junta eximirá de examen a cualquier persona de buena conducta moral, que sea ciudadano de Puerto Rico y esté en posesión de sus derechos civiles, que tenga más de veintiún años de edad y que haya practicado por no menos de cinco años con antelación a la aprobación de esta Ley, como contador, jefe de contabilidad o auditor con alguna o varias firmas o corporaciones de reconocida importancia a juicio de la junta o con el Gobierno Insular o con municipios de primera clase, o que haya ejercido por no menos de cinco años como, contador público o profesor de contabilidad avanzada, y que presente su solicitud a la Junta Examinadora de Contadores dentro de los seis meses siguientes a la fecha en que entre en vigor esta Ley, acompañando los derechos que dispone el Artículo 5, así como también los documentos necesarios que acrediten su derecho a que se le exima de examen de acuerdo con las disposiciones de este Artículo."

Según ese precepto puede la junta expedir título sin examen en los siguientes casos: (*a*) a la persona que haya practicado por no menos de cinco años como contador, jefe de contabilidad o auditor con alguna firma o firmas o corporaciones de reconocida importancia a juicio de la junta; (*b*) que haya practicado con el Gobierno Insular o con municipios de primera clase; (*c*) que haya ejercido por no menos de cinco años como contador público o profesor de contabilidad avanzada.

En esa ley no se dispone como en su similar No. 31 del mismo año referente a ingenieros que, a menos que exista prueba en contrario, la junta aceptará como evidencia satis-

factoria la declaración jurada expresada en la solicitud, y por el contrario ordena que con la solicitud de exención de examen se acompañarán los documentos necesarios que acrediten el derecho de exención interesado.

Acogiéndose a lo dispuesto en el artículo octavo de esa ley, Don Miguel Meléndez Muñoz presentó a la Junta Examinadora de Contadores Públicos una solicitud jurada para que le expidiese el título de contador público sin examen, exponiendo en ella, en lo pertinente ahora, que trabajó como contador en la sucursal de Cayey de The P. R. Leaf Tobacco Co. desde 1906 a 1908; como contador de Modesto Munitiz, en Cayey, de 1908 a 1911; como contador-secretario de "Cayey Light & Ice Co.," en Cayey, desde 1915 a 1919; como contador de la firma "R. Ortiz y Ca.," en Cayey, desde 1911 a 1925; y como gerente y jefe de contabilidad del banco "Crédito y Ahorro Ponceño" en su sucursal de Cayey, desde 1919 a 1927. Con la petición acompañó una declaración jurada de Diego Capó según la cual el Sr. Meléndez ejerció las funciones de gerente y jefe contador de la sucursal en Cayey del banco Crédito y Ahorro Ponceño desde 1º. de noviembre de 1919 hasta noviembre de 1927.

La junta examinadora negó la petición de exención de examen por no reunir los requisitos exigidos por el artículo 8 de la expresada ley.

En vista de esa negativa el Sr. Meléndez solicitó de la junta que reconsiderase la expresada resolución y expuso que de 1899 a 1906 estuvo empleado en la casa de comercio de Don Modesto Munitiz en Cayey, consistiendo su trabajo en establecer un sistema de contabilidad para las operaciones de dicho establecimiento comercial y abrió libros de contabilidad consistentes en el Borrador, Diario Mayor, Cuentas Corrientes, Caja y demás auxiliares necesarios, así como los de Inventarios y Balances; cuyos libros llevó personalmente hasta 1904 y desde esa fecha hasta 1906, como jefe de contabilidad inspeccionó y dirigió las operaciones que se asen-

taban en los libros, excediendo el volumen de los negocios de esa casa mercantil en ese período de $350,000; y que el ramo de comercio era compraventa de provisiones, mercancías secas, venta de letras de cámbio y refacción agrícola; que de 1904 a 1906, en adición al trabajo con Munitiz, fué director de la compañía de transporte público constituída por los señores Anacleto Agudo, Adrián Pérez, José Ramírez Muñoz, Francisco Fernández Nava y Santori; estableciendo un sistema de contabilidad apropiado a ese negocio y llevando los libros personalmente; que de 1906 a 1908 trabajó con la sucursal en Cayey de la corporación The P. R. Leaf Tobacco Co., siendo su trabajo anotar las operaciones que esa compañía hacía en el distrito, llevando libros del sistema de contabilidad de esa corporación, donde se anotaban las cuentas de refacción y las de gastos de administración; que de 1908 a 1911 estableció un sistema de contabilidad para la mercantil en Cayey "R. Ortiz & Co.," y abrió sus libros de contabilidad; casa que hacía operaciones anualmente por $100,000; que de 1916 a 1919 ejerció las funciones de secretario-contador de la corporación "Cayey Light & Ice Co." con domicilio en Cayey, estableciendo un sistema de contabilidad adecuado para ella; que de 1919 a 1927 estuvo empleado con el Banco Crédito y Ahorro Ponceño en su sucursal de Cayey, teniendo a su cargo la gerencia, dirección, inspección y administración de todas sus operaciones en Cayey y pueblos limítrofes de Cidra y Aibonito, siendo el jefe de la contabilidad e inspeccionando los asientos que se hacían en los libros y rindiendo diariamente a la Dirección del banco balances de las operaciones realizadas y llevando personalmente la dirección de toda la contabilidad; que de 1919 a 1927, además de sus servicios a la sucursal del banco, se dedicó públicamente a la profesión de contador público y jefe de contabilidad, con oficina abierta separada del banco y anunciándose como tal; que inspeccionó y dirigió la contabilidad de varias casas de comercio como la de "Aponte

y Sobrino," de Cayey; inspeccionó la contabilidad de R. Ortiz y Ca., que era una casa importadora, y la de Aragunde y Ca., que tenía un volumen superior a $100,000, así como la de Peláez e Hijo, de Cayey; que abrió un sistema de contabilidad a la corporación "Cayey Industrial Corporation" y que compareció en la Corte de Distrito de Guayama declarando en varios pleitos como jefe de contabilidad del Crédito y Ahorro Ponceño, como experto en la contabilidad, respecto a operaciones asentadas en los libros de dicho banco. También consignó en la solicitud de reconsideración que ha hecho estudios de contabilidad, que ha estado constantemente desde 1899 ejerciendo la profesión de contador, tenedor de libros y jefe de contabilidad, con oficina en Cayey, siendo llamado por diversas casas de comercio para examinar sus sistemas de contabilidad y que está dispuesto a presentar la evidencia que la junta exija si no estimare suficiente la presentada. Con la solicitud de reconsideración acompañó declaración jurada de Aponte. & Sobrino por José D. Aponte, R. Ortiz y Ca., por Pedro Quintana, Aragunde & Ca., por Angel Aragunde, y A. Peláez e Hijo, por Aureliano Peláez, en las que se manifiesta que todo lo que dice la solicitud en cuanto a práctica y trabajo que ha hecho el Sr. Meléndez como contador público y Jefe de contabilidad es cierto, que han utilizado los servicios del Sr. Meléndez en la forma que dice su petición y que lo han conocido siempre como un contador público en Cayey.

La petición de reconsideración fué negada por la junta por no encontrar fundamento para revocar su decisión anterior, que se basó en no considerar la junta de reconocida importancia, desde el punto de vista de la contabilidad, a las firmas con las cuales el peticionario manifiesta en su solicitud jurada que ha tenido experiencia en el ramo de contabilidad.

Después de la última negativa acudió el Sr. Meléndez a la Corte de Distrito de San Juan solicitando que librara un

auto de *mandamus* contra la mencionada junta obligándola a que le expidiese el título sin examen, fundándose en que la junta, sin causa justificada y en violación de su deber, se niega a expedirle el título de contador público y en que sin citar al peticionario y sin darle audiencia se ha negado a cumplir el deber que le impone la ley, sin discreción alguna, de expedirle el título una vez probadas con declaraciones juradas las condiciones establecidas por la ley y que la resolución de la junta es caprichosa y arbitraria.

Libró la corte un auto condicional de *mandamus*, que fué contestado por la junta oponiéndose a él, y el día de su vista fueron presentadas como prueba las dos peticiones antes reseñadas y los documentos con ellas acompañados, de que hemos hecho mención. También se presentaron dos certificaciones que no hemos mencionado porque la corte inferior reconoce que las admitió indebidamente y por esto no las tuvo en cuenta para su fallo. Como prueba testifical fué presentada la declaración de Don Antonio R. Hernández, uno de los tres miembros de la junta demandada, quien, en resumen, declaró que antes de empezar a resolver las solicitudes de exención la junta tomó un acuerdo definiendo e interpretando lo que a juicio de ella es una firma de reconocida importancia, por el cual hizo constar que la palabra "importancia," que se usa en la ley, significa la importancia de las firmas o corporaciones desde el punto de vista de la contabilidad y no del capital o estado financiero; que el Banco Crédito y Ahorro Ponceño tiene un capital como de un millón y medio de dólares y es depositario del Gobierno Insular y Municipal; que no conoce a la corporación Porto Rican Leaf Tobacco Co., que se dedicaba a cultivar tabaco y cree que ha vendido sus terrenos; que la junta para su resolución no tuvo en cuenta el capital de las firmas sino la contabilidad de ellas; que la junta puede apreciar la clase de contabilidad de cada casa, prescindiendo del capital; que el sistema de contabilidad de las casas con las cuales

trabajó el Sr. Meléndez era simple; que la junta no conocía el sistema de contabilidad de esas casas pero sabía poco más o menos qué clase era porque tienen en cuenta la naturaleza del negocio; que hay casas de comercio que tienen contabilidad complicada pero no eran de esa clase con las que trabajó Meléndez porque lo que en ellas se llevaba era teneduría de libros corriente; que no examinaron la contabilidad de esas casas de comercio; que el negocio de la casa Munitiz era acarreto de mercancías entre Cayey y San Juan; que no ha examinado la contabilidad de la Porto Rican Leaf Tobacco Co. pero que a las sucursales se les da la pauta para sus libros por la casa principal y tienen el trabajo marcado; que técnicamente, para saber el sistema de contabilidad de una casa no hay necesidad de ir allá, poco más o menos se sabe; que la contabilidad de la sucursal en Cayey del Crédito y Ahorro Ponceño es distinta de la de Ponce porque en las sucursales no se llevan ciertos libros ni se tienen que resolver ciertos problemas de contabilidad; que no sabe qué sistema de libros usan las mercantiles Munitiz y Ca., Aponte & Sobrino, A. Peláez e Hijo y R. Ortiz y Ca. porque no los ha examinado ni tampoco los otros miembros de la junta, que él sepa; que la junta no reconoce como de importancia a las sucursales porque su contabilidad está trazada por la oficina principal; y que han concedido licencias sin examen a otras personas.

Terminada esa vista la corte de distrito dictó sentencia haciendo definitivo el auto de *mandamus* y contra ella interpuso la junta el presente recurso de apelación.

Los fundamentos que tuvo la corte inferior para la resolución que ha sido apelada son: que la ley impone a la junta el deber ministerial de expedir títulos sin examen en los casos en ella mencionados, sin que el hecho de que esté facultada para determinar la importancia de las firmas o corporaciones con quienes el solicitante hubiere practicado convierta el acto de eximir de examen y expedir el título,

que es ministerial, en discrecional; en que se probó la importancia de las firmas con quienes practicó el peticionario bajo el punto de vista de la contabilidad; y en que la demandada admitió que el peticionario es un contador y jefe de contabilidad con más de cinco años de práctica.

■■ El deber de la junta apelante impuesto por la ley en su artículo 8 no es ministerial puesto que deja a su juicio determinar si las firmas o corporaciones con las cuales ha practicado la persona que solicita la expedición de título sin examen son de reconocida importancia. Así lo resolvimos en el caso de *Salgado* v. *Junta Examinadora de Contadores Públicos,* 41 D.P.R. 739. Se ha decidido que cuando un funcionario tiene facultades para considerar prueba y luego resolver, el deber es judicial o cuasi judicial y por tanto discrecional. *Sweney* v. *Young* (1925) 131 A. 153; *Goldsmith* v. *Clabauch,* 6 F. (2d.) 94, 55 App. D. C. 346. La junta está facultada para resolver si la práctica alegada es de contador, de jefe de contabilidad o auditor, así como acerca de la importancia de las firmas con las cuales se ha trabajado. La ley dejó a la junta que creó el resolver esas cuestiones de carácter técnico. Por consiguiente, el deber de la apelante es discrecional y no meramente ministerial.

■ A nuestro entender la petición de *mandamus* no alega que la junta abusara de su poder discrecional pues descansa en la teoría de que con la petición y documentos acompañados a ella debió la junta expedirle el título que solicitó y que no lo hizo, sin citarlo y oírlo y faltando al deber ineludible que tenía de expedirlo, pero trataremos ese aspecto del caso toda vez que la corte ha resuelto que se probó que el apelado reúne las condiciones requeridas para que el título que interesa se le expida.

La junta no tenía que citar y oír al peticionario para resolver su solicitud porque la ley exige que la persona que interese el título sin examen acompañará con su solicitud los documentos necesarios que acrediten su derecho, y con

la petición y los documentos es que la junta ha de resolver; ni tiene tampoco el deber de expresar al peticionario la prueba que es necesaria para resolver el caso. El apelado presentó los documentos que él consideró necesarios y la junta no niega que trabajara con las firmas que dice, sino que ellas no son de reconocida importancia en cuanto a contabilidad.

La declaración del testigo Sr. Hernández, única adicional a los documentos acompañados con la solicitud y con la de reconsideración, no destruye la apreciación que hizo la junta de que no eran de importancia a los efectos de la contabilidad las firmas con las cuales trabajó el apelado, pues ese testigo declaró en resumen que las dos sucursales con las que trabajó el peticionario no son de importancia para los efectos de la contabilidad porque en cuanto a ellas son dirigidas por las oficinas principales por lo que no tienen que resolver problemas de contabilidad, y porque en cuanto a las otras firmas se dedicaban a un solo negocio y no necesitaban contabilidad complicada, bastándoles con la simple teneduría de libros.

En la primera solicitud se refirió el apelado a servicios del apartado que hemos marcado como (a), o sea, como contador, jefe de contabilidad o auditor de firmas de reconocida importancia, pero en la reconsideración que interesó parece referirse también al apartado (c) o sea el haber ejercido como contador público por no menos de cinco años.

En la solicitud de reconsideración no dice el peticionario que ejerciera como contador público, que son las palabras de la ley, pero aparte de esto, por su contexto se refiere a los cargos que desempeñó en las referidas firmas, pues dice que desde 1899 hasta el presente (1928) ha ejercido la profesión de contador, tenedor de libros y jefe de contabilidad, que es la misma práctica requerida con firmas de reconocida importancia en el apartado (a).

Está equivocada la afirmación que hace la corte inferior de que la junta aceptó en su contestación a la petición de

*mandamus* que el peticionario es un contador y jefe de contabilidad con más de cinco años de práctica, pues tal hecho fué negado en las siguientes palabras: ''niega . . '. que el peticionario haya practicado como contador público por más de cinco años.''

No encontrando que la junta apelante cometiera abuso de discreción al negar la petición del apelado, *debemos revocar la sentencia apelada y dictar otra declarando sin lugar el auto de* mandamus *que solicitó el apelado, sin especial condena de costas.*